**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

**MOREL ACOUSTIC, Ltd.,**

        **Plaintiff,**

-vs-                                          **Case No. 3-:04-CV-348**

**MOREL ACOUSTICS USA, Inc., et al.,**

                                                     **Judge Thomas M. Rose**

        **Defendants.**

---

**ENTRY AND ORDER OVERRULING DEFENDANTS' MOTION TO DISMISS (Doc. #10)**

---

        This Complaint is brought by Plaintiff Morel Acoustic, Ltd. (Morel) against Defendant Morel Acoustics USA, Inc. ("Morel USA") and Defendant Mikhael Shabani ("Shabani"). Morel is an Israeli Corporation, Morel USA is a Massachusetts Corporation and Shabani is a citizen of Massachusetts and Morel USA's President.

        Count I of Morel's Complaint is a federal claim for trademark infringement in violation of 15 U.S.C. §1114 and §§1116-18. The basis of Count I is Morel USA's use of the "MOREL" name and mark.

        Count II is for violation of the federal Anticybersquatting Consumer Protection Act, 15 U.S.C. §1125(d). The basis of Count II is Morel USA's registration and use of the <morelusa.com> and <morelacoustics.com> domain names.

        Count III of Morel's Complaint is for false designation of origin in violation of the Lanham Act, 15 U.S.C. §1125(a). The basis of Count III is Morel USA's use of the MOREL name in connection with various pieces of electronic equipment.

Count IV of Morel's Complaint is an Ohio common law trademark infringement and unfair competition claim. Count IV is a state-law claim based upon the same alleged federal law violations that are set forth in Counts I, II and III.

Now before the Court is Morel USA and Shabani's (collectively the "Defendants") Motion To Dismiss. (Doc. #10.) The bases for this Motion are that all Counts of Morel's Complaint are barred by the doctrine of laches as applied to the applicable statute of limitations, that this Court does not have personal jurisdiction and that venue in this Court is improper. Each will be addressed in turn.

## LACHES

The Defendants first argue that all Counts of Morel's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) based upon the doctrine of laches and the applicable statute of limitations. Morel responds that neither the doctrine of laches nor any statute of limitations provide a basis to dismiss its Complaint pursuant to Rule 12(b)(6). The standard of review will first be set forth followed by an analysis of the argument.

### Standard of Review

The purpose of a Rule 12(b)(6) motion to dismiss is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F. 2d 635, 638 (6th Cir. 1993)(citing *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987)). Put another way, "the purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about

the facts or the substantive merits of the plaintiff's case."  5B Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1356 (3d ed. 2004).

The test for dismissal under Fed. R. Civ. P. 12(b)(6) is a stringent one. "[A] complaint should not be dismissed for failure to state a claim on which relief can be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 811 (1993)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In addition, for purposes of the motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff and plaintiff's allegations are to be taken as true. *Scheuer v. Rhodes,* 416 U.S. 232 (1974).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Columbia Natural Resources, Inc. v. Tatum*, 58 F. 3d 1101 (6th Cir. 1995), *cert. denied*, 516 U.S. 1158 (1996).  The Court "need not accept as true legal conclusions or unwarranted factual inferences*."  Morgan v. Church's Fried Chicken,* 829 F. 2d 10, 12 (6th Cir. 1987).  Put another way, bare assertions of legal conclusions are not sufficient.  *Lillard v. Shelby County Bd. of Educ.*, 76 F. 3d 716, 726 (6th Cir. 1996).  It is only well-pleaded facts which are construed liberally in favor of the party opposing the motion to dismiss.  *Id.*; see also Wright & Miller, *supra*, §1357.

In this case, the Defendants' Motion To Dismiss is based upon application of the statute of limitations. When a complaint indicates that the relief requested therein is barred by the statute of limitations, the complaint is to be dismissed pursuant to Rule 12(b)6) for failure to state a claim upon which relief can be granted. *Martinez v. Western Ohio Health Care Corp.*,

872 F.Supp. 469, 471 (S.D.Ohio 1994)(citing *Kaiser Aluminum and Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105 (1983)).

In addition to involving Rule 12(b)(6), this branch of Defendants' Motion seeks dismissal based upon the doctrine of laches. Since the Lanham Act does not contain a statute of limitations, courts use principles of laches as developed by courts of equity when analyzing whether a Lanham Act claim is time-barred. *Ford Motor Company v. Catalanotte*, 342 F.3d 543, 550 (6th Cir. 2003).

Laches is "principally a question of the inequity of permitting the claim to be enforced." *Id.* (quoting *Homberg v. Armbrecht*, 327 U.S. 392, 396 (1946)). Laches is specifically defined as a "negligent and unintentional failure to protect one's rights." *Pearpoint Ltd. V. SRECO-Flexible, Inc.*, Case No. 3:02CV7335, 2003 WL 23198814 at *3 (N.D. Ohio Dec. 17, 2003)(citing *Elvis Presley Enter., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991)). A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted and (2) prejudice to the party asserting it. *Id.* at *4. Further, implicit in a finding of laches regarding trademark infringement is the presumption that an underlying claim for infringement existed at the time when the court begins to measure the plaintiff's delay. *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 569 (6th Cir. 2000), *cert. denied*, 531 U.S. 944 (2000).

To evaluate whether a party has been diligent in protecting a trademark, a court looks to the state law statute of limitations for injury to personal property. *Pearpoint,* 2003 WL 23198814 at *3. The Ohio statute of limitations for injury to personal property is two (2) years. *Id.* (citing Ohio Rev. Code §2305.10).

In the Sixth Circuit, "there is a strong presumption that a plaintiff's delay is reasonable so long as the analogous statute of limitations has not elapsed." *Id.* (citing *Elvis Presley Enter.*, 936 F.2d at 894). Further, "a delay beyond the… statutory period is presumptively prejudicial and unreasonable." *Id.* (citing *Nartron Corp. v. STMicroelectronics, Inc.* 305 F.3d 397, 408 (6th Cir. 2002), *cert. denied*, 538 U.S. 907 (2003)). Finally, the period of delay is measured from the time when the plaintiff has actual or constructive knowledge of the alleged infringing activity. *Id.*

"To rebut the presumption that delay beyond the statutory period is unreasonable and prejudicial, a plaintiff must: (1) rebut the presumption of prejudice; (2) establish that there was a good excuse for its delay; or (3) show that the defendant engaged in 'particularly egregious conduct which would change the equities significantly in plaintiff's favor.'" *Id.* (citing *Nartron*, 305 F.3d at 409).

Regarding damages, laches bars pre-suit monetary damages. *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 320 (6th Cir. 2001). However, laches does not bar injunctive relief and does not bar damages that occur after the filing of the suit. *Kellogg*, 209 F.3d at 568.

The Third Circuit has held that the laches defense should generally not be disposed of in pretrial motions and this is a pretrial motion. *Country Floors, Inc. v. A Partnership Composed of Gepner and Ford*, 930 F.2d 1056,1066 (3rd Cir. 1991). The reason given is that "correct disposition of the equitable defense of laches can only be made 'by a close scrutiny of the particular facts and a balancing of the respective interests and equities of the parties, as well as of the general public.'" *Id.* (quoting 2 J. McCarthy *Trademarks and Unfair Competition* 573 (2d

ed. 1984)). Therefore, according to the Third Circuit, disposition of the defense of laches usually requires the kind of record that is created only by a full trial on the merits. *Id.*

The Supreme Court has not, however, indicated that laches is a question for the jury. The Supreme Court has held that, "the existence of laches is a question primarily addressed to the discretion of the trial court." *Czaplicki v. The Hoegh Silvercloud*, 351 U.S. 525, 534 (1956). However, the Sixth Circuit has affirmed the granting of summary judgment regarding laches by a district court. *City of Wyandotte v. Consolidated Rail Corp.*, 262 F.3d 581, 584 (6th Cir. 2001). Therefore, assuming that laches is not a question that only the jury can decide, the analysis will proceed.

Analysis

Because this is a Motion To Dismiss pursuant to Rule 12(b)(6), the Court must limit its review to the facts alleged in the Complaint. In relevant part, Morel's Complaint alleges that consent to use the MOREL mark was withdrawn in 1996. (Compl. ¶11.) Morel then allegedly contacted the Defendants about their unauthorized use of the MOREL name and mark "on several occasions." (Id. ¶16.) Further, Morel allegedly requested that the Defendants cease their acts of unfair competition on several occasions, but the Defendants have refused to cease such acts. (Id. ¶22.)

The Court cannot conclude from this pleading that Morel lacked diligence nor can the Court conclude that the Defendants were prejudiced. In addition, the Court cannot determine when Morel had actual or constructive knowledge of the alleged infringement from the face of the Complaint. Therefore, the elements of the defense of laches are not satisfied on the face of the Complaint. This only serves to confirm that the defense of laches requires a close scrutiny of

the facts and a balancing of the respective interests of the Parties, a scrutiny and balancing that cannot be achieved when viewing only a Complaint.

The Court notes that Morel is seeking injunctive relief and, presumably, monetary damages that may arise after the filing of this lawsuit. This type of relief is not barred by the doctrine of laches. Therefore, Morel's Complaint could not be dismissed at this time due to the defense of laches based upon the damages sought.

The branch of the Defendants' Motion for Summary Judgment seeking dismissal based upon the defense of laches is OVERRULED. The analysis now turns to the second branch of Defendants' Motion To Dismiss.

## PERSONAL JURISDICTION

In the second branch of their Motion To Dismiss, the Defendants argue that the Court may not exercise personal jurisdiction over them because they lack sufficient minimum contacts with Ohio. Morel responds that the Defendants have sufficient contacts with Ohio to be subject to personal jurisdiction in this Court. The standard of review regarding personal jurisdiction will first be set forth following an analysis of this branch of the Motion.

### Standard of Review

When a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2) is made, the plaintiff has the burden of proving that jurisdiction exists. *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003)(citing *Neogen Corp. v. Neo Gen Screening,* Inc., 282 F.3d 883, 887-88 (6th Cir. 2002)). As a part of the burden of proof, the plaintiff's burden of persuasion depends upon whether the court conducts an evidentiary hearing on the motion to dismiss.

When an evidentiary hearing is held, the plaintiff must establish jurisdiction by a preponderance of the evidence. *Id.* at 417. When there is no evidentiary hearing, as is the case here, the plaintiff must make only a prima facie showing and the pleading and affidavits, when in conflict, are viewed in a light most favorable to the plaintiff. *Diebold, Inc. v. Firstcard Financial Services, Inc.*, 104 F.Supp.2d 758, 760 (N.D.Ohio 2000)(citing *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998)).

Federal courts apply the law of the forum state when determining whether personal jurisdiction exists. *Youn,* 324 F.3d at 417; *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). If personal jurisdiction exists under the forum state's long-arm statute, the court then must determine whether personal jurisdiction would comport with the Due Process Clause of the U.S. Constitution. *Id.*

For the purpose of the Constitutional Due Process analysis, there is a distinction between general and specific jurisdiction. *Youn,* 324 F.3d at *417*. However, either one is an adequate basis for personal jurisdiction. *Id.*

General jurisdiction exists when the defendant's contacts with the forum state are "substantial" and "continuous and systematic," so that the state may exercise personal jurisdiction even if the action does not relate to the defendant's contacts with the state. *Id.* at 418. Specific jurisdiction exists when the contacts giving rise to jurisdiction relate to the claim that is before the court. *Id*.

The Sixth Circuit has established a three-part test for determining whether specific personal jurisdiction exists. *Id.* For specific personal jurisdiction to exist; (1) a defendant must purposefully avail itself of the privilege of acting in the forum state; (2) the cause of action must

arise from the defendant's activities in the forum state; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of personal jurisdiction over the defendant reasonable. *Id.* (citing *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir. 1968)). Finally, when a state's long-arm statute extends to the limits of Due Process, a district court is able to collapse its long-arm-analysis into its due process analysis. *Matrix Essentials, Inc. v. Harmon Stores, Inc.,* 205 F.Supp.2d 779, 783 (N.D.Ohio 2001) (citing *CMS Generation Co. v. Spectrum Technologies U.S.A., Inc.*, 69 F.Supp.2d 915, 919 (E.D.Mich. 1999)).

One of the alleged contacts in this case involve a website maintained by Morel USA. The Sixth Circuit has adopted the "Zippo sliding scale" approach to determine if the operation of a website constitutes purposeful availment. *The Cadle Company v. Schlichtmann*, 123 Fed.App. 675, 2005 WL 293666 at **3 (6th Cir. Feb. 8, 2005). The "Zippo sliding scale" approach "distinguishes between interactive websites, where the defendant establishes repeated online contacts with residents of the forum state, and websites that are passive, where the defendant merely posts information on the site." *Id.* "Interactive websites can subject the defendant to specific personal jurisdiction, whereas passive websites are less likely to confer such jurisdiction." *Id.* (citing *Neogen*, 282 F.3d at 889-91).

For example, Operation of a website can constitute purposeful availment if the website is interactive "to a degree that reveals specifically intended interaction" with residents of the forum state. *Bird*, 289 F.3d at 874. Further, even if the website is not interactive, the use of names obtained from the website for business purposes constitutes purposeful availment. *Id.* at 875. However, the maintenance of a website, in and of itself, does not constitute the purposeful

availment of the privilege of acting in the forum state because a website, by its nature, can be accessed internationally. *Neogen*, 282 F.3d at 890. Finally, a website must be considered along with other contacts with the forum state. *Neogen*, 282 F.3d at 891.

In this case, Ohio is the forum state and the Ohio Supreme Court has determined that Ohio's long-arm statute does not extend to the limits of due process. *Goldstein v. Christiansen*, 638 N.E.2d 541, 545 n.1 (Ohio 1994). Therefore, this Court must determine if personal jurisdiction is present under Ohio's long-arm statute and, if so, whether personal jurisdiction comports with the Due Process Clause of the U.S. Constitution.

Ohio's long-arm statute allows personal jurisdiction over out-of-state defendants for a variety of reasons including when the cause of action arises out of their "[t]ransacting any business in this state." *Matrix*, 205 F.Supp. 2d at 785 (citing Ohio's long arm statute, O.R.C. §2307.382). Further, courts determine whether an out-of-state defendant has transacted business in Ohio on a case-by-case basis with only the language of Ohio's long-arm statute for guidance. *Id.*

Analysis

First, Morel must make a prima facie showing that Morel USA and Shabani are subject to Ohio's long-arm statute. If Morel USA and Shabani are subject to Ohio's long-arm statute, Morel must then make a prima facie showing that subjecting Morel USA and Shabani to personal jurisdiction comports with the Due Process Clause of the U.S. Constitution.

Ohio's Long-Arm Statute

Ohio's long-arm statute provides that a court may exercise personal jurisdiction over a defendant who, among other things, transacts any business in Ohio. Ohio Rev. Code

-10-

§2307.382(A)(1). This section of the Ohio Revised Code is "very broadly worded" and permits jurisdiction over nonresident defendants who transact "any" business in Ohio. *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 559 N.E.2d 477, 480 (Ohio 1990).

By their own admission, Morel USA has transacted business with persons in Ohio. Shabani declares that "Morel Acoustics USA, Inc. has, at most, derived 1% of its revenue from a small mail order business that deals in repairs and parts from some mail order customers in Ohio." (Shabani Decl. 25 3/2/20.) Specifically, Shabani indicates that an Ohio company called "Parts Express" is a Morel USA distributor who sells Morel products to manufacturing companies. (Wunsi Decl. Ex. B 5/8/05.) Morel USA also confirms that it transacted business with Parts Express at least until 2002. (Shabani Decl. 3-4 undated.)

Morel USA also operates a website that offers to sell goods and, by virtue of being on the internet, is available to customers in Ohio. Morel USA argues that this website is not interactive. While this may be true, the website offers to sell goods, provides order forms to be downloaded and provides an e-mail link over which an order may be placed. (Shabani Decl. 5 undated.) The Website provides payment options and shipping information. (Id.) In addition, the website provides specifications and prices for products and invites customers to place orders. (Id.)

Morel USA's website is not interactive in that potential customers do not interact directly with Morel USA using the website. However, this website is not passive either. Customers can use the website to download forms and are given instructions on how to place orders. Customers can use the link provided to e-mail their orders to Morel USA. Customers are also given payment options and shipping information. The operation of this website falls somewhere on the

"Zippo sliding scale" and, when combined with the other contacts with Ohio, provides enough contacts to confer personal jurisdiction over Morel USA under Ohio's long-arm statute.

Jurisdiction over Shabani under Ohio's long-arm statute is established by virtue of his allegation that he is owner of the trade mark at issue (Shabani Decl. 10 3/2/05), because he is allegedly the sole owner and primary officer of Morel USA (Shabani Decl. 2, 8 3/2/05) and because Morel USA transacted business in Ohio and is subject to Ohio's long-arm statute.[1] *Cf., Third National Bank in Nashville v. WEDGE Group Inc.*, 882 F.2d 1087, 1090 (6th Cir. 1989) (finding a parent corporation's total ownership and substantial control over its subsidiary's activities sufficient to show that it purposefully availed itself of doing business in the forum state as a result of the subsidiary's actions), *cert. denied*, 493 U.S. 1058 (1990). Having determined that Morel USA and Shabani are subject to personal jurisdiction under Ohio's long-arm statute, the analysis turns to whether exercising personal jurisdiction over them would comport with the Due Process Clause of the U.S. Constitution.

In this case, Morel does not argue that this Court has general jurisdiction over Morel USA and Shabani. Morel argues that this Court has specific jurisdiction in that the contacts that give rise to jurisdiction relate to the claim that is before the Court. This Court must, therefore, apply the three-part *Mohasco* test to determine if it has specific personal jurisdiction.

Purposeful Availment

To comport with due process, a defendant must purposefully avail itself of the privilege of acting in the forum state. In this case, Morel USA purposefully availed itself of the privilege of acting in Ohio. Morel USA provided products and services to residents of Ohio and

---

[1] Accordingly, Morel USA and Shabani will hereinafter be discussed as a single entity with regard to the issue of personal jurisdiction.

specifically to Parts Express, an Ohio company. Although these contacts may have been initiated by customers in Ohio, Morel USA deliberately chose to supply the products and services. *See, Neogen*, 282 F.3d at 892 (holding that a defendant that shipped materials to and accepted payment from customers residing in the forum state, regardless of what percentage of the defendant's business was represented by these contacts, purposefully availed itself of the privilege of acting in the forum state).

Morel USA also operates a website that does more than simply advertise Morel USA's products. The website provides specifications and prices, invites orders, provides order forms for downloading and provides an e-mail link for placing orders. The existence of the website together with the actual providing of products and services to customers in Ohio is prima facie evidence that Morel USA purposefully availed itself of the privilege of doing business in Ohio.

### Basis for Cause of Action

To comport with due process, the cause of action must arise from the defendant's activities in the forum state. This requirement is satisfied when the defendant's contacts are related to the operative facts of the case. *Bird*, 289 F.3d at 875.

In this case, Morel's claims are for trademark infringement and unfair competition based upon Morel USA's use of MOREL as a trademark in connection with their business and based upon Morel USA's use of Morel as part of a domain name. Morel has made a prima facie case that Morel USA used the MOREL trademark when selling products in Ohio and used the MOREL domain name to transact business in Ohio. Morel USA's use of MOREL in transacting business in Ohio is the cause of the injuries alleged by Morel. As such, Morel USA's contacts

are related to the operative facts of the case. Said another way, Morel's Complaint arises, in part, out of Morel USA's contacts with Ohio.

## Reasonableness

Finally, to comport with due process, the acts of the defendant or the consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of personal jurisdiction over the defendant reasonable. When the defendants have sufficient contacts with the forum state and the wrongs of which the plaintiff complains arise out of those contacts, a court may infer that exercise of personal jurisdiction over the defendant is reasonable. *See, CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996).

The Defendants declare that neither Shabani nor any agent of Morel USA has ever visited Ohio nor do they conduct business in Ohio. (Morel Decl. 23024 3/2/05.) The Defendants are not licensed to do business in Ohio and none of Defendants' products are sold in Ohio. (Id. 27-28.) Also, the Defendants do not now own, lease or control property in Ohio and they have no bank accounts in Ohio. (Id. 29-30.) Finally, the Defendants declare that neither Shabani nor Morel USA maintain phone or fax listings in Ohio and none of their salespersons travel to Ohio. (Id. 32-35.)

However, in this case, the exercise of personal jurisdiction is reasonable. Morel USA has had a business relationship with an Ohio corporation that involved sales to Ohio residents. In addition, Morel USA continues to maintain a website which markets products to users, which presumably include Ohio residents. Although not interactive per se, the website provides order forms for downloading, provides telephone and fax numbers and provides an e-mail link for placing orders.

Conclusion

Ohio's long-arm statute provides that a Court may exercise jurisdiction over Morel USA and Shabani because they have transacted business in Ohio. Further, the exercise of personal jurisdiction over Morel USA and Shabani by this Court comports with the Due Process Clause of the U.S. Constitution. Therefore, the branch of Defendants' Motion seeking dismissal for lack of personal jurisdiction is OVERRULED. The analysis now turns to the third branch of Defendants' Motion.

**VENUE**

In the third branch of their Motion To Dismiss, the Defendants argue that this matter should be transferred to United States District Court for the District of Massachusetts because all transactions alleged in the complaint occurred in the State of Massachusetts. Morel responds that venue is proper in this judicial district under 28 U.S.C. §1391 and venue should remain here.

Venue In the Southern District of Ohio

Section 1391(b) of Chapter 28 of the United States Code provides that "a civil action where jurisdiction is not founded solely on diversity of citizenship may …be brought only in … (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. §1391(b). Section 1391(c) then provides that "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. §1391(c).

In this case, Morel USA is a corporate defendant and is subject to personal jurisdiction in this judicial district. Therefore, venue in this judicial district is proper.

## Transfer of Venue

Having determined that venue is proper in this judicial district, the analysis turns to the Defendants wish to transfer venue to the District of Massachusetts. Section 1404(a) of Chapter 28 of the United States Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Centerville ALF, Inc. v. Balanced Care Corp.*, 197 F.Supp.2d 1039, 1048-49 (S.D. Ohio 2002). Also, the moving parties, in this case Morel USA and Shabani, have the burden of proving that a venue change is appropriate. *Id.* at 1049. Finally, determination as to whether to transfer venue rests with the sound discretion of this Court. *Nicol v. Koscinski*, 188 F.2d 537, 538 (6th Cir. 1951).

When deciding whether to allow a change of venue, the district court considers the private interests of the parties as well as other public interest concerns such as systemic integrity and fairness which come under the rubric of "interests of justice." *Centerville*, 197 F.Supp.2d at 1049. Although there is no definitive list, the private and public interests are embedded in a number of case-specific factors to be considered. Among the factors to be considered are: (1) the plaintiff's choice of forum; (2) the location of witnesses and documents; (3) the nature of the action and where the bulk of operative facts occurred; and (4) convenience of the parties. *Id.* When weighing these factors, unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should "rarely" be disturbed. *Nicol*, 188 F.2d at 537.

## Plaintiff's Choice of Forum

Plaintiff elected to litigate this matter in the Southern District of Ohio. This choice weighs heavily against transferring venue to the District of Massachusetts.

Location of Evidence

The Defendants present evidence that all of their operations are in Massachusetts. Thus, all of their officers, employees and relevant witnesses reside in Massachusetts. Further, all of the Defendants' records are in Massachusetts although the location of documents does not usually justify transfer as documents are easily copied and shipped. *See, Reed Elsevier, Inc. v. Innovator Corp.*, 105 F.Supp. 2d 816, 822 (S.D. Ohio 2000).

Morel responds that the Defendants have not shown that it will be inconvenient or impractical to produce their evidence and witnesses in this forum. *See, Shapiro v. Merrill Lynch & Co.*, 634 F.Supp. 587, 590 (S.D. Ohio 1986) ("The mere fact that some witnesses from the proposed transferee district may be called is, by itself, inadequate to warrant a transfer where it is not shown that they would be severely inconvenienced or that they are indeed key witnesses."). Morel also responds that third party witnesses that are not in Massachusetts may be called in that, without the benefit of discovery, the only confirmed U.S. customers for Defendants' business are located in Ohio.

Most probably, some of the evidence, including witnesses, is located in Massachusetts. That evidence which is in the form of records can presumably easily be shipped to Ohio. It is unclear as to where other witnesses may be located although there is evidence that some may be located in Ohio. Therefore, the Defendants have not shown that this factor weighs in their favor.

Nature of Action and Where Bulk of Operative Facts Occurred

This is an action for trademark infringement and for alleged illegal use of an internet domain name. The events giving rise to the claim include the alleged shipment of goods to

persons in Ohio and the use of the Defendants' website by individuals including Ohio residents. This factor weighs in favor of venue in Ohio.

## Convenience of the Parties

The Plaintiff is located in Israel and the Defendants are located in Massachusetts. Neither party is located in Ohio. In addition, the Plaintiff unpersuasively argues that, if this matter was transferred to Massachusetts, he could possibly be prejudiced by jurors who have a natural inclination to side with Morel USA and Shabani who are persons from their state.

The Plaintiff could be present for trial in Massachusetts as easily as in Ohio and the Court is unpersuaded by Plaintiff's argument regarding the jury. Clearly, trial in Massachusetts would be more convenient for the Defendants. Therefore, this factor weighs in favor of transferring venue.

## Conclusion

Venue for this matter lies in the Southern District of Ohio. Morel USA is a corporate defendant and is subject to personal jurisdiction in this District.

Further, the Defendants have not met their burden of showing that this matter should be transferred to the District of Massachusetts. The Plaintiffs choice of forum in the Southern District of Ohio and the nature of the action are not outweighed by the convenience of the Parties. The branch of the Defendants' Motion To Dismiss regarding venue is OVERRULED. In addition, the Defendants' request to change venue to the District of Massachusetts is not well founded and is OVERRULED.

**SUMMARY**

Morel USA and Shabani have not shown that the elements of the defense of laches are satisfied on the face of the Complaint. Also, a court may exercise personal jurisdiction over Morel USA and Shabani under Ohio's long-arm statute because they have transacted business in Ohio and the exercise of this personal jurisdiction by this Court comports with the Due Process Clause of the U.S. Constitution. Finally, venue for this matter is proper in the Southern District of Ohio and the Defendants have not shown that venue should be transferred to the District of Massachusetts. Therefore, the Defendants' Motion To Dismiss is OVERRULED. All of Morel's Complaint remains to be adjudicated in this Court.

**DONE** and **ORDERED** in Dayton, Ohio, this Seventh day of September, 2005.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record